TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
SCOTT PAETTY (Cal. Bar No. 274719)
CATHERINE AHN (Cal. Bar No. 248286)
BRIAN FAERSTEIN (Cal. Bar No. 274850)
Assistant United States Attorneys
Major Frauds/Environmental and Community Safety Crimes Sections
    1100/1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-6527/2424/3819
    Facsimile: (213) 894-6269/0141
    E-mail:    Scott.Paetty@usdoj.gov
                Catherine.S.Ahn@usdoj.gov
                Brian.Faerstein@usdoj.gov

DANIEL S. KAHN
Acting Chief, Fraud Section
Criminal Division, U.S. Department of Justice
CHRISTOPHER FENTON
Trial Attorney, Fraud Section
Criminal Division, U.S. Department of Justice
    1400 New York Avenue NW, 3rd Floor
    Washington, DC 20530
    Telephone: (202) 320-0539
    Facsimile: (202) 514-0152
    E-mail:    Christopher.Fenton@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD AYVAZYAN,<br>  aka "Richard Avazian" and<br>    "Iuliia Zhadko,"<br>MARIETTA TERABELIAN,<br>  aka "Marietta Abelian" and<br>    "Viktoria Kauichko,"<br>ARTUR AYVAZYAN,<br>  aka "Arthur Ayvazyan," and<br>TAMARA DADYAN,<br>MANUK GRIGORYAN,<br>  aka "Mike Grigoryan," and<br>    "Anton Kudiumov,"<br>ARMAN HAYRAPETYAN,<br>EDVARD PARONYAN,<br>  aka "Edvard Paronian" and<br>    "Edward Paronyan," and<br>VAHE DADYAN, | No. CR 20-579-SVW-2<br><br>GOVERNMENT'S OPPOSITION TO DEFENDANT MARIETTA TERABELIAN'S MOTION TO SUPPRESS OR EXCLUDE JAIL CALLS; DECLARATION OF SCOTT PAETTY; EXHIBITS<br><br>Hearing Date: June 14, 2021<br>Hearing Time: 1:30 p.m.<br>Trial Date:   June 15, 2021<br>Location:    Courtroom of the<br>               Hon. Stephen V.<br>               Wilson |

Defendants.

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California, Assistant United States Attorneys Scott Paetty, Catherine S. Ahn, and Brian Faerstein, and Department of Justice Trial Attorney Christopher Fenton, hereby files its opposition to defendant Marietta Terabelian's motion to suppress or exclude jail calls.  (ECF 393.)  This opposition is based upon the attached memorandum of points and authorities, the declaration of Scott Paetty and accompanying exhibits, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: June 4, 2021                    Respectfully submitted,

                                       TRACY L. WILKISON
                                       Acting United States Attorney

                                       SCOTT M. GARRINGER
                                       Assistant United States Attorney
                                       Chief, Criminal Division


                                       _____/s/_____
                                       SCOTT PAETTY
                                       CATHERINE AHN
                                       BRIAN FAERSTEIN
                                       Assistant United States Attorneys
                                       CHRISTOPHER FENTON
                                       Department of Justice Trial Attorney

                                       Attorneys for Plaintiff
                                       UNITED STATES OF AMERICA

# TABLE OF CONTENTS

DESCRIPTION                                                              PAGE

TABLE OF AUTHORITIES.....................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES......................................1

I.    INTRODUCTION........................................................1

II.   STATEMENT OF FACTS..................................................2

      A.    Relevant Allegations.........................................2

      B.    Defendant's Arrest and Presentment...........................3

      C.    Defendant's Jail Calls.......................................5

III.  ARGUMENT............................................................6

      A.    Defendant's Jail Calls Do Not Implicate Kastigar............6

      B.    Admitting Defendant's Jail Calls Does Not Violate the
            McNabb-Mallory Rule..........................................9

            1.    The McNabb-Mallory Rule Does Not Apply to
                  Defendant's Jail Calls That Are Not the Product
                  of Interrogation.......................................9

            2.    Even If the McNabb-Mallory Rule Applies,
                  Defendant's Jail Calls Are Admissible Under the
                  Safe Harbor...........................................12

            3.    Any Delay in Presenting Defendant Was Reasonable
                  Due to Unavailability of the Magistrate Judge.......14

      C.    The Probative Value of Defendant's Jail Calls Is Not
            Substantially Outweighed by a Danger of Unfair
            Prejudice Under Rule 403.....................................17

      D.    The Jail Calls Do Not Implicate Any Doyle Concerns.......20

IV.   CONCLUSION.........................................................21

i

**TABLE OF AUTHORITIES**

<u>DESCRIPTION</u>                                                          <u>PAGE</u>

**<u>Federal Cases</u>**

<u>Corley v. United States</u>,

  556 U.S. 303 (2009) ........................................ passim

<u>Doyle v. Ohio</u>,

  426 U.S. 610 (1976) ...................................... 1, 6, 20

<u>Kastigar v. United States</u>,

  406 U.S. 441 (1972) .......................................... 1, 6

<u>Mallory v. United States</u>,

  354 U.S. 449 (1957) ......................................... 9, 10

<u>McNabb v. United States</u>,

  318 U.S. 332 (1943) ............................................. 9

<u>Old Chief v. United States</u>,

  519 U.S. 172 (1997) ............................................ 18

<u>United State v. Van Poyck</u>,

  77 F.3d 285 (9th Cir. 1996) ............................... 15, 16

<u>United States v. Alvarez-Sanchez</u>,

  511 U.S. 350 (1994) ............................................. 9

<u>United States v. Blitz</u>,

  151 F.3d 1002 (9th Cir. 1998) ................................. 19

<u>United States v. Boche-Perez</u>,

  755 F.3d 327 (5th Cir. 2014) .............................. 15, 16

<u>United States v. Colon</u>,

  835 F.2d 27 (2d Cir. 1987) ................................ 10, 11

<u>United States v. Fullwood</u>,

  86 F.3d 27 (2d Cir. 1996) ..................................... 11

ii

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                    PAGE

United States v. Garcia-Hernandez,

  569 F.3d 1100 (9th Cir. 2009) ................................. 10, 15

United States v. Lambros,

  564 F.2d 26 (8th Cir. 1977) ...................................... 11

United States v. Liera,

  585 F.3d 1237 (9th Cir. 2009) .................................... 16

United States v. Pimental,

  755 F.3d 1095 (9th Cir. 2014) ................................ 11, 12

United States v. Sanders,

  563 F.2d 379 (8th Cir. 1977) ..................................... 19

United States v. Simas,

  937 F.2d 459 (9th Cir. 1991) ..................................... 19

United States v. Skillman,

  922 F.2d 1370 (9th Cir. 1990) .................................... 18

United States v. Wilson,

  838 F.2d 1081 (9th Cir. 1988) .................................... 16

**Federal Statutes**

18 U.S.C. § 922(g)(1) ............................................ 18

18 U.S.C. § 3501(c) .......................................... passim

18 U.S.C. § 3501(d) .......................................... passim

**Federal Rules**

Fed. R. Crim. Proc. 5(a) ....................................... 9, 15

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Defendant Marietta Terabelian ("defendant") has filed a motion to suppress or exclude two recorded jail calls she made on her own volition and within hours of her arrest in this case.  During the calls, defendant admitted to having been "caught" and instructed the recipients of the calls to "clean the house as much as you can," undoubtedly in reference to removing evidence of the vast fraudulent scheme for which she is charged from her residence.  Defendant raises four separate challenges to the admissibility of these highly probative and incriminating jail calls, all of which should be rejected.

First, defendant contends that the jail calls are tainted under Kastigar v. United States, 406 U.S. 441 (1972), by virtue of the Court's suppression of certain digital device evidence seized from defendant prior to her arrest in Miami.  The government anticipates this claim will be addressed more fully during the post-trial Kastigar hearing ordered by the Court.  Nonetheless, defendant's argument is belied by the factual record, which reflects the government had more than sufficient evidence of probable cause to arrest defendant at the time of the border stop in Miami, independent of any information obtained from the digital device evidence.

Second, defendant claims that her recorded jail calls should be suppressed under the McNabb-Mallory rule based on the purported unreasonable delay in her presentment to a magistrate judge following her arrest.  Defendant's challenge on this basis fails for multiple reasons, most prominently of which being that defendant's jail calls are statutorily exempted from the McNabb-Mallory line of cases

because the calls were not the product of interrogation.  Even if the McNabb-Mallory rule does apply (which it does not), the jail calls are admissible under the six-hour safe harbor of 18 U.S.C. § 3501(c), and the one-day delay in defendant's presentment was reasonable in any event on account of the unavailability of the criminal duty magistrate judge in Miami.

Third, defendant seeks to exclude the jail calls under Federal Rule of Evidence 403, positing arguments regarding the "ambiguous" meaning of her highly incriminating statements otherwise appropriate for the jury's consideration.  Defendant fails to demonstrate any credible danger of unfair prejudice from the jail calls, much less unfair prejudice that substantially outweighs the highly probative value of the calls.

Finally, defendant raises in passing an argument predicated on Doyle v. Ohio, 426 U.S. 610 (1976), contending that her requests for assistance in obtaining an attorney in the jail calls present potential constitutional issues.  The government does not agree that Doyle and its progeny apply to this factual scenario, but nonetheless is willing to make appropriate redactions to references to the request for an attorney in the jail call recordings and transcripts.

## II.  STATEMENT OF FACTS

### A.  Relevant Allegations

Defendant, and seven other co-conspirators, are charged with numerous felonies arising out of their alleged fraudulent scheme to steal and launder tens of millions of dollars from federally funded COVID-19 disaster relief programs.  (ECF 154.)  The facts underlying these allegations are discussed in detail in the government's motion in limine number 2 (ECF 384), which is incorporated by reference

herein.  Additional relevant facts pertaining to this opposition are included below.

### B.   Defendant's Arrest and Presentment

Defendant was arrested at Miami International Airport at approximately 3:00 a.m. on October 20, 2020, pursuant to a probable cause arrest, as reflected in the FBI's report documenting the arrest.[1]  (See Exhibit 1 to the Declaration of Scott Paetty ("Paetty Decl.")).  The same day, the government filed a criminal complaint charging defendant and her husband (codefendant Richard Ayvazyan or "R. Ayvazyan") with conspiracy to commit wire fraud and bank fraud. (ECF 1.)

Defendant was arrested after Customs and Border Patrol ("CBP") officers in Miami conducted a secondary screening upon defendant's return to the United States from a vacation in Turks and Caicos.  The secondary screening revealed, among other things, that defendant was in possession of a credit card in the name of "Viktoria Kaiuchko." (ECF 1, ¶ 41.)

By that point in the government's investigation, which had commenced approximately four months earlier, the government had identified numerous fraudulent COVID-19 disaster relief loan applications submitted in the name Viktoria Kauichko.  (See ECF 1, ¶¶ 27-32, 40.)  The government also had identified a bank account held in the name of Viktoria Kauichko used to receive proceeds of

---

[1] Defendant states in her motion that "she was formally under arrest by no later than 1:45 a.m. on Tuesday, October 20, 2020," citing the Court's order on defendants Terabelian's and R. Ayvazyan's motions to suppress the Miami border stop and the search of their residence.  (ECF 393 at 10 (citing ECF 296 at 2).)  However, the Court's order made clear that "nothing in this [Factual and Procedural Background] section should be construed as a factual finding by the Court."  ECF 296 at 1 n.1.

fraudulent loans.  (See id. ¶¶ 29-32.)  In addition, the government had determined that a California driver's license in the name of Viktoria Kauichko submitted in support of a loan application was fake; that the California Department of Motor Vehicles did not have any driver license information on record for that name; and that the California Employment Development Department did not have any employment records on file for 2019 or 2020 for a company called Runyan Tax Services, for which a Paycheck Protection Program ("PPP") loan application had been submitted by Viktoria Kauichko (listed as the purported CEO of that company).  (See id., ¶¶ 30.a-b.)  The government's investigation had further revealed that defendant had transferred $565,000 from a separate bank account in her own name to an escrow account as part of a down payment on a $3,250,000 residential property in Tarzana in defendant's and her husband's (co-defendant R. Ayvazyan's) names.  Agents determined that a portion of the $565,000 had derived from suspected fraudulent COVID-19 disaster relief loans.  (See id., ¶¶ 23-26.)

    After she was arrested on Tuesday, October 20, 2020, defendant was transported to the Broward County Jail.  (See Paetty Decl., Ex. 1.)  According to the magistrate court duty calendar obtained from the United States Attorney's Office for the Southern District of Florida, there was no magistrate judge scheduled for criminal duty matters on October 20, 2020, where defendant would be making her initial appearance.  (See Paetty Decl., Ex. 2.)  Because defendant was arrested in the early morning hours of Tuesday, October 20, 2020, a date upon which no criminal duty matters were being heard, defendant's initial appearance on the criminal complaint (filed

4

October 20, 2020) was scheduled for the first available date for criminal duty court, Wednesday, October 21, 2020.  (See id.)

### C.   Defendant's Jail Calls

On the day of her arrest on October 20, 2020, and prior to presentment before the magistrate judge in the Southern District of Florida on October 21, defendant made a series of recorded telephone calls while in custody at the Broward County Jail.  (See ECF 393-5.) The government seeks to admit as evidence at trial the first two of those recorded calls, i.e., the calls that defendant challenges in her motion.  (See ECF 393-3, 393-4.)[2]

Specifically, at approximately 8:29 a.m. on October 20, 2020, defendant made a telephone call on a recorded line at the jail during which she left a message informing the recipient that "me and Rich [Ayvazyan] are both at the Miami Jail" and requesting that the recipient "try to clean, clean the house as much as you can, everything."  (ECF 393-3, 393-5; see also Paetty Decl. ¶¶ 4-6.) Approximately six minutes later, at 8:35 a.m., defendant left another

---

[2]  As described in the accompanying Paetty Declaration, the metadata for the two audio-recorded jail calls at issue reflects that these two calls were the first two recordings -- at approximately 8:29 a.m. and 8:35 a.m., respectively -- in the call index produced by the government and excerpted by defendant as Exhibit D to her motion.  (See Paetty Decl. ¶¶ 4-6; ECF 393-5.)  Defendant filed a converted PDF version of the index in support of her motion.  (See ECF 393-1 (Declaration of Ryan V. Fraser) ¶ 5.)  However, the government originally produced an .html file version of the index to defendants that allows the viewer to determine (by "right-clicking" on the file names) the properties of each of the audio recording files, including the file name of each recording.  (See Paetty Decl. ¶¶ 5-6.)  As reflected in the transcripts of the audio recordings at issue, the file names for each of the first two recorded calls in the index -- 10.65.0.21-45fa121f0a4100152cf15435a185e734_1.mp3, and 10.82.0.21-45fe37540a5200153681fe9a09fedd59_1.mp3, respectively -- are the same file names for the two recordings and transcripts the government intends to offer at trial, i.e., the calls made at approximately 8:29 a.m. and 8:35 a.m.  (See Paetty Decl. ¶¶ 4-6; ECF 393-3, 393-4.)

1  recorded message stating in relevant part, "Richard and I, uhm, were
2  caught, Some ca [sic]. . . hum, found a card or I don't know what . .
3  . you know the charges . . . Clean the house as much as you can."
4  (ECF 393-4, 393-5; see also Paetty Decl. ¶¶ 4-6.)

5      The government will seek to admit these two calls at trial, at a
6  minimum, as party admissions under Rule 801(d)(2) of the Federal
7  Rules of Evidence.

8  **III. ARGUMENT**

9      Defendant argues that the jail calls should be suppressed on
10 four separate grounds.  Specifically, defendant contends that (i) the
11 jail calls are tainted under Kastigar v. United States, 406 U.S. 441
12 (1972), by evidence from the border stop that has been suppressed in
13 this case; (ii) the calls should be suppressed under the McNabb-
14 Mallory rule based on the purported unreasonable delay in the
15 presentment of defendant; (iii) the calls should be excluded under
16 the balancing test of Rule 403 of the Federal Rules of Evidence; and
17 (iv) the admission of the calls would constitute error under Doyle v.
18 Ohio, 426 U.S. 610 (1976).  Defendant's contentions are without merit
19 and her motion should be denied for the following reasons.

20     **A.   Defendant's Jail Calls Do Not Implicate Kastigar**

21     Defendant contends that the jail calls should be excluded at
22 trial under Kastigar due to the purported taint from digital evidence
23 obtained during the border stop that the Court has previously
24 suppressed.  (ECF 393 at 6-9.)  The government disagrees and will
25 oppose any such assertion at the post-trial Kastigar hearing that the
26 Court has ordered in this case.  (ECF 356.)  Notwithstanding the
27 Court's order regarding the post-trial scheduling of the Kastigar
28 hearing, defendant's motion effectively asks the Court to issue a

6

preliminary finding that <u>Kastigar</u> bars admission of the jail calls. The government respectfully submits that the Court should not do so, for the reasons discussed more fully in the government's opposition, filed June 4, 2021, to defendants R. Ayvayan's and Terabelian's pending motion to dismiss (ECF 381).

In any event, defendant's argument as to the purportedly tainted link between the suppressed digital evidence and the jail calls she made voluntarily is belied by the factual record. Defendant contends that but for her arrest, she would not have made the jail calls, and the arrest was necessarily the result of the suppressed digital evidence. (ECF 393 at 7-9.) To that end, defendant asserts that because FBI Special Agent Justin Palmerton "ma[de] no mention of the Viktoria Kauichko identity, nor [did] he imply that Terabelian [wa]s using that identity as an alias" in his referral email to CBP, "the phone contents were an important part of the government's claimed probable cause to arrest Terabelian." (<u>Id.</u> at 7.)

Defendant ignores, however, the substantial evidence the government had already obtained about "Viktoria Kauichko" and defendant's role in the fraudulent scheme by the time of the border stop. As summarized in section II.B above and described more fully in the criminal complaint filed later the same day of defendant's arrest, the government had developed substantial evidence about the use of the fake identity "Viktoria Kauichko" to submit numerous fraudulent loan applications as well as to set up a bank account and launder fraudulent loan proceeds to purchase property in defendant's name. (<u>See</u> ECF 1, ¶¶ 23-32, 40.) Defendant similarly disregards the import of the physical credit card in the name of "Viktoria Kauichko" found in defendant's wallet in Miami -- evidence which defendant did

not move to suppress and is admissible at trial.  (ECF 296 at 19 n.16.).  And, as reflected in Special Agent Palmerton's referral email to CBP, the FBI already had begun focusing its fraud investigation on defendant, among others, by the time of the border stop in Miami.[3]  (See ECF 187, Ex. 1 (Under Seal) to Declaration of Scott Paetty in Support of Opposition to Motion to Suppress.)

Taken together with the substantial evidence then obtained to date, the discovery of defendant's possession of a physical credit card in the name of Viktoria Kauichko -- putting aside any of the other digital evidence reviewed during the border stop -- provided more than sufficient independent probable cause to arrest defendant in Miami.  Indeed, the criminal complaint filed later the same day detailed the substantial independent evidence from the government's then four-months-long investigation as well as the discovery that defendant "was in possession of at least one credit card in the name of 'Viktoria Kauichko.'"  (ECF 1, ¶¶ 23-32, 40, 41.)  The criminal complaint only made brief reference to the content of the later-suppressed digital evidence in two paragraphs.  (See id., ¶¶ 6, 41.)

Accordingly, although the government anticipates this issue will be addressed more fully post-trial, the fact of defendant's arrest was not tainted under Kastigar and it cannot serve as a causal basis to exclude jail calls defendant voluntarily made following her arrest.

---

[3] In a different section of her motion addressing the McNabb-Mallory rule, defendant concedes the FBI already had begun focusing its investigation on her involvement in the alleged fraudulent scheme based on evidence obtained prior to the border stop:  "No delay was necessary after 1:45 a.m. on October 20, 2020, to determine whether to charge Terabelian.  Agent Palmerton had flagged her for special investigation days in advance of her arrival at the Miami International Airport . . . ."  (ECF 393 at 11.)

**B.  Admitting Defendant's Jail Calls Does Not Violate the
McNabb-Mallory Rule**

Defendant also claims that the jail calls should be suppressed
pursuant to the McNabb-Mallory rule.  (ECF 393 at 9-14.)  Defendant's
argument fails for several reasons.  First, as set forth in 18 U.S.C.
§ 3501(d), the McNabb-Mallory rule does not apply to defendant's jail
calls because they were not the product of an interrogation and thus
are statutorily not subject to suppression.  Second, even assuming
that the McNabb-Mallory rule does apply (which it does not),
defendant's jail calls nonetheless fall within the six-hour safe
harbor provision of 18 U.S.C. § 3501(c).  Finally, putting aside the
safe harbor provision that applies here, the delay in defendant's
presentment in this case was reasonable in light of administrative
delay, including the unavailability of the duty magistrate judge in
the Southern District of Florida on the date of defendant's arrest.

    1.  The McNabb-Mallory Rule Does Not Apply to Defendant's
        Jail Calls That Are Not the Product of Interrogation

The McNabb-Mallory rule "generally rendered inadmissible
confessions made during periods of detention that violated the prompt
present requirement of [Fed. R. Crim. Proc. 5(a)]."  United States v.
Alvarez-Sanchez, 511 U.S. 350, 354 (1994) (citing McNabb v. United
States, 318 U.S. 332 (1943); Mallory v. United States, 354 U.S. 449
(1957)).  Congress modified the application of the McNabb-Mallory
rule through 18 U.S.C. § 3501(c).  See Corley v. United States, 556
U.S. 303, 322 (2009).  Section 3501(c) provides, in relevant part,
that a confession "shall not be inadmissible solely because of delay
in bringing such person before a magistrate judge . . . if such
confession is found by the trial judge to have been made voluntarily

9

and if the weight to be given the confession is left to the jury and if such confession was made or given by such person within six hours immediately following his arrest or other detention." 18 U.S.C. § 3501(c).

Critically, in the next sub-section of the statute, Congress makes clear that, "[n]othing contained in this section shall bar the admission in evidence of any confession made or given voluntarily by any person to any other person without interrogation by anyone, or at any time at which the person who made or gave such confession was not under arrest or other detention." 18 U.S.C. § 3501(d) (emphasis added). Congress's exclusion of confessions that are not the product of interrogation is consistent with the Supreme Court's "repeated" recognition "that delay for the purpose of interrogation is the epitome of 'unnecessary delay.'" Corley, 556 U.S. at 308 (quoting Mallory, 354 U.S. at 455-56); see also id. at 320 ("In a world without McNabb–Mallory, federal agents would be free to question suspects for extended periods before bringing them out in the open, and we have always known what custodial secrecy leads to."); United States v. Garcia-Hernandez, 569 F.3d 1100, 1106 (9th Cir. 2009) ("The McNabb–Mallory rule was designed to deter police from engaging in lengthy prearraignment detentions for the purpose of further interrogating a defendant.").

Following section 3501(d), courts have held that "[i]nculpatory statements 'made . . . voluntarily . . . without interrogation' are thus exempt from the procedural requirements of Section 3501." United States v. Colon, 835 F.2d 27, 30 (2d Cir. 1987) (citing cases from other circuits). These courts recognize that where a defendant's "statement was spontaneous and not the product of

10

interrogation or its functional equivalent, it is therefore not excludable under Section 3501 even if the delay in arraignment was unreasonable." Id. at 31; see also United States v. Fullwood, 86 F.3d 27, 31 (2d Cir. 1996) ("[E]ven if the delay in arraignment was unreasonable, [defendant's] statement is not excludable under § 3501(c) if it was voluntarily given without interrogation."); United States v. Lambros, 564 F.2d 26, 31 (8th Cir. 1977) ("Appellant volunteered the information to his cellmate.  Informal statements of this kind, although incriminating in effect, by terms of section 3501(d) do not trigger the procedures mandated by s 3501(a).").

The two jail calls at issue here indisputably were not the product of interrogation by law enforcement or anyone else for that matter.  As reflected in the transcripts of the two calls, defendant made two calls of her own volition, leaving voice messages for one or more other people that were not even on the line.  (ECF 393-3, 393-4.)  Defendant does not contend in her motion, nor could she, that these two calls were the result of interrogation.

Moreover, defendant's acknowledgement that the calls "were not elicited by government action" (ECF 393 at 12) is incomplete because it fails to cite the interrogation requirement under 18 U.S.C. § 3501(d), much less address its direct relevance to her motion. Defendant instead relies on United States v. Pimental, 755 F.3d 1095 (9th Cir. 2014), emphasizing that the Ninth Circuit found an incriminating statement should have been suppressed "in a conversation the defendant took the initiative to request."  (ECF 393 at 12.)  But Pimental only further underscores the requirement that the confession be the product of interrogation.  The defendant's confession in Pimental came during a discussion with agents after law

11

1  enforcement lulled him into the belief he had to cooperate to receive

2  a lesser sentence.  _See_ _id._ at 1099.  The court further described the

3  defendant's ongoing conversations with agents as interrogation,

4  further underscoring that, unlike the jail calls here, the confession

5  in _Pimental_ was not subject to the section 3501(d) exemption.  _See_

6  _id._ at 1102 ("[Lead agent's] desire to fully investigate the crime by

7  interrogating Torres Pimental and Canales was not a valid reason to

8  delay presenting Torres Pimental to a magistrate judge.  There is no

9  evidence in the record that such interrogation was necessary to

10  determine whether Torres Pimental should be criminally charged (or

11  any suggestion that he was not going to be charged).").

12      Nothing of the kind exists here.  Defendant's jail calls were

13  not the product of "interrogation by anyone," and thus the calls are

14  not subject to suppression under the _McNabb_-_Mallory_ rule.  18 U.S.C.

15  § 3501(d).

16          2.  Even If the McNabb-Mallory Rule Applies, Defendant's
              Jail Calls Are Admissible Under the Safe Harbor

17

18      Even if the _McNabb_-_Mallory_ rule and 18 U.S.C. § 3501(c) apply in

19  this case (which they do not), the two jail calls at issue

20  nonetheless fall within the statutory six-hour safe harbor provision.

21      Section 3501(c) provides a safe harbor for otherwise voluntary

22  confessions made within six hours of a defendant's arrest and before

23  presentment to a magistrate judge.  Interpreting this provision, the

24  Supreme Court explained, "[i]f the confession came within that [six-

25  hour] period, it is admissible, subject to the other Rules of

26  Evidence, so long as it was 'made voluntarily and . . . the weight to

27  be given [it] is left to the jury.'"  _Corley_, 556 U.S. at 322 (citing

28  18 U.S.C. § 3501(c)).

Defendant was arrested at 3:00 a.m. on October 20, 2020.  The calls she made from the Broward County Jail were at 8:29 a.m. and 8:35 a.m. that same day, less than six hours after her arrest.  Thus, both calls fall within the safe harbor provision of 18 U.S.C. § 3501(c).  Consequently, defendant's jail calls are admissible so long as they were made voluntarily and their weight is to be left to the jury.[4]  18 U.S.C. § 3501(c); Corley, 556 U.S. at 322.

Defendant has not alleged in her motion that she made the jail calls involuntarily, nor can she.  Defendant's statements that she had been "caught" and requesting that "someone clean the house" evince defendant's knowing, voluntary attempt to conceal the conspiracy, obstruct justice, and avoid responsibility.  Defendant appears to allude to involuntariness indirectly, contending that "[h]ad she been promptly presented to a magistrate judge, she would not have been left to make incriminating statements in her jail calls without first receiving the essential warning that anything she might say could be used against her."  (ECF 393 at 13-14.)

Defendant points to the alleged "arresting officers" as purportedly having previously "denied her requests for access to counsel, failed to Mirandize her, and coerced her to provide her cellphone passcode."  (Id. at 13.)  But defendant conflates the CBP officers who conducted the secondary screening, during which she allegedly did not receive a Miranda admonishment, with the "arresting officers" from the FBI, who took her into custody.  Nothing in the record, and nothing in defendant's motion, support a finding that

---

[4] As explained further in section III.C below, the meaning and weight of defendant's highly probative admissions and self-incriminating statements should be left for the jury to decide.

1  defendant's rights were violated by the FBI agents who arrested her.

2  Indeed, defendant's repeated requests during the jail calls she

3  initiated for assistance in obtaining an attorney reflect, on

4  balance, her knowledge of her rights while she was in custody,

5  further undercutting any possible claim of involuntariness.

6  Defendant's jail calls at issue are thus admissible under the safe

7  harbor of 18 U.S.C. § 3501(c), even though such analysis is

8  inapplicable and unnecessary in this case under 18 U.S.C. § 3501(d).

9         3.   <u>Any Delay in Presenting Defendant Was Reasonable Due to Unavailability of the Magistrate Judge</u>

10

11      Assuming, once again, that the <u>McNabb</u>-<u>Mallory</u> rule applies in

12  this case (it does not), and that the jail calls at issue were not

13  within the six-hour safe harbor (they were), the jail calls still

14  should not be suppressed because any delay in presentment was

15  reasonable.

16      Where a "confession occurred before presentment and beyond six

17  hours," such that the safe harbor does not apply, "the court must

18  decide whether delaying that long was unreasonable or unnecessary

19  under the <u>McNabb</u>-<u>Mallory</u> cases, and if it was, the confession is to

20  be suppressed." <u>Corley</u>, 556 U.S. at 322.  In assessing the

21  reasonableness of delay, the Ninth Circuit has "been careful not to

22  overextend <u>McNabb</u>-<u>Mallory</u>'s prophylactic rule in cases where there

23  was a reasonable delay unrelated to any prolonged interrogation of

24  the arrestee.  In particular, we have held that administrative delays

25  due to the unavailability of government personnel and judges

26  necessary to completing the arraignment process are reasonable and

27  necessary and therefore do not violate the prompt-presentment

28

requirement of Rule 5(a)." <u>United States v. Garcia-Hernandez</u>, 569 F.3d 1100, 1106 (9th Cir. 2009).

Here, defendant was arrested pursuant to a probable cause arrest at approximately 3:00 a.m. on Tuesday, October 20, 2020. The government diligently filed a criminal complaint, including a 17-page affidavit setting forth probable cause, later the same day. (ECF 1.) However, there was no magistrate judge scheduled to hear criminal duty matters on October 20, 2020, where defendant would be making her initial appearance. (<u>See</u> Paetty Decl., Ex. 2.) Thus, defendant made her initial appearance on the complaint on Wednesday, October 21, the first available court date for her presentment in the Southern District of Florida following defendant's arrest. The administrative delay due to the unavailability of the magistrate judge was a reasonable basis for the one-day delay in presentment and weighs heavily against suppression. <u>See Garcia-Hernandez</u>, 569 F.3d at 1106 ("unavailability of . . . judges necessary to completing the arraignment process are reasonable and necessary"); <u>United States v. Boche-Perez</u>, 755 F.3d 327, 338 (5th Cir. 2014) ("Courts also accept delays when the delays arise out of the unavailability of the magistrate. A magistrate can be considered unavailable due to a host of reasons including: a busy docket; a closed court; or other factors, such as distance and weather, that make transportation impractical, futile, and/or dangerous."); <u>cf. United State v. Van Poyck</u>, 77 F.3d 285, 289 (9th Cir. 1996) ("We therefore now explicitly hold what has been implicitly understood all along: An overnight or weekend delay in arraignment due to the unavailability of a magistrate does not by itself render the delay unreasonable under § 3501(c).").

It is also worth noting that the primary concerns of the McNabb-Mallory rule are not implicated here.  The government filed the criminal complaint with the criminal duty magistrate judge in the Central District of California on the same day as defendant's arrest, and defendant made her initial appearance on that complaint the following day in Miami when a magistrate judge in the Southern District of Florida was first available.  "The prompt presentment requirement does not require a magistrate to be available twenty-four hours a day, and the government is not required to take the fastest possible route to the courthouse—just a reasonable one."  Boche-Perez, 755 F.3d at 338 (citing Van Poyck, 77 F.3d at 289).  Here, as it turns out, defendant's road to the courthouse in Florida was not only reasonable, but was, in fact, the fastest possible route.

Moreover, defendant's one-day delay in presentment was not because agents were interrogating defendant.  Cf. United States v. Liera, 585 F.3d 1237, 1239 (9th Cir. 2009) (delay not reasonable where second interrogation occurred 3 minutes before the first available initial appearance calendar after defendant's arrest); United States v. Wilson, 838 F.2d 1081, 1085 (9th Cir. 1988) (delay not reasonable where agents were interrogating defendant during the first scheduled arraignment subsequent to his arrest).  Defendant does not contend she was interrogated following her arrest, and her decision to make the jail calls at issue within hours of her arrest was not connected in any way to the unrelated administrative delay occasioned by the magistrate judge's limited schedule.  In sum, nothing about the timing of defendant's presentment on the criminal complaint in this case warrants the exclusion of evidence that is

1  directly relevant to her involvement in the charged conspiracy, as

2  discussed further below.

3      **C.**     **The Probative Value of Defendant's Jail Calls Is Not**

             **Substantially Outweighed by a Danger of Unfair Prejudice**

4               **Under Rule 403**

5       Defendant's arguments that the jail calls should be excluded

6  under Rule 403 of the Federal Rules of Evidence are similarly

7  unavailing.  (ECF 393 at 15-16.)

8       In the subject calls, defendant admits to being "caught" after

9  they "found a card" and requested that the recipient (or recipients)

10  of the calls "clean the house as much as you can," among other

11  things.  Defendant contends that the statements in these calls are

12  "facially ambiguous" and "innocent," resorting to the dictionary for

13  the definition of "catch" and positing that "clean the house" could

14  "refer literally to the need to tidy Terabelian's home."[5]  (ECF 393.)

15       Putting aside the fact that defendant's interpretative arguments

16  go to weight and not admissibility of the evidence and thus are for

17  the jury to consider, the statements at issue are nonetheless highly

18  probative of defendant's state of mind and complicity in the fraud

19  conspiracy.  The government expects to call agents at trial who

20  conducted a search of defendant's and codefendant's R. Ayvazyan's

21  home approximately two weeks after their arrest, pursuant to a

22  federal search warrant.  The agents will testify, among other things,

23  that when they searched defendants' residence, they found

24  significantly less evidence there than they found in a concurrently

25  executed warrant at the residence of codefendants Artur Ayvazyan and

26

27             _____

28       [5] Notably, even in the online dictionary definition of "catch" cited by defendant, the first explanatory use of the word is to "catch a thief".  (ECF 393 at 15.)

Tamara Dadyan, consistent with the coconspirators (and family members) moving evidence of the fraud, or "cleaning the house," between their homes.  (See generally ECF 188, 207, 384.)

Moreover, with respect to her statement that she was "caught," defendant acknowledges the highly probative value of this evidence in her motion.  She states that the "jail calls appear uniquely to link Terabelian's mental state to the government's physical evidence, in that she appears to explain her remark that she had been 'caught' by referring immediately thereafter to the government's discovery of the credit card." (ECF 393 at 8 n.3.)  The linking of the discovery of the credit card in the name of "Viktoria Kauichko" to her admission that she was "caught" is highly probative of her consciousness of guilt.

Defendant argues that the probative value of these calls should be "discounted for the availability of other evidence" of defendant's consciousness of guilt.  (ECF 393 at 15-16, citing Old Chief v. United States, 519 U.S. 172 (1997).)  Defendant points only to her attempt to conceal $450,000 in cash in the bushes during execution of a search warrant at her home as an alternate source of critical state of mind evidence.  But, the defendant in Old Chief offered to stipulate to an element of the offense (his prior felony conviction for purposes of an 18 U.S.C. § 922(g)(1) charge) pertaining to the straightforward issue of defendant's legal status.  Id. at 190.  Here, defendant does not concede her knowing participation in the alleged conspiracies and contests the admission of the jail calls to establish her consciousness of guilt.  Evidence on her state of mind is highly probative and far from cumulative given the centrality of this contested issue at trial.  See, e.g., United States v.

Skillman, 922 F.2d 1370, 1374 (9th Cir. 1990) ("We conclude this evidence was not 'needless[ly]' cumulative in light of the difficulty in establishing the requisite racial animus and Skillman's theory-of-defense that he was a mere passive bystander at the crime."); United States v. Sanders, 563 F.2d 379, 384 (8th Cir. 1977) (evidence of multiple prior fraudulent claims not cumulative where defendant's "failure to disclose a number of prior claims is far more probative of his fraudulent intent than his failure to disclose a single claim").

As defendant acknowledges, her statements in the calls are indeed prejudicial, as they provide a window into how she perceived her own criminal conduct. This is not a reason to exclude them, however. See United States v. Simas, 937 F.2d 459, 464 (9th Cir. 1991) (damaging and prejudicial testimony of prior thefts by a defendant charged with mail fraud admissible under Rule 404(b) because prejudice to the defendant was not "unfair prejudice"); see also United States v. Blitz, 151 F.3d 1002, 1009 (9th Cir. 1998) (noting that even if evidence results in "some prejudice (as all unfavorable evidence about a defendant does)," it does not necessarily constitute "unfair prejudice"). The key inquiry is whether the probative value of the evidence is substantially outweighed by a danger of unfair prejudice. It is not.

Defendant's concern of a "time-consuming mini-trial within the larger trial" also is unfounded. The government intends to call one witness regarding the jail calls, the Armenian language specialist who translated the calls, and the government has provided notice to

defendant to that effect.[6]  (ECF 393-2.)  Defendant's ability to
cross-examine that witness regarding possible alternative
interpretations of "caught", "clean the house", or any other word or
phrase in the translations, obviates the need for additional
witnesses and evidence to rebut the government's arguments, and thus
defendant's concerns about an extensive mini-trial over the
interpretation of just a few statements ring hollow.

Furthermore, to mitigate any perceived prejudice regarding the
fact that the calls were made from jail, the Court could provide the
jury with a limiting instruction that the jury is not to infer guilt
of the charged crimes from the fact that defendant made the calls
from jail.  See, e.g., Ninth Cir. Model Crim. Instructions 2.12.
This is no different than prohibiting inferences of guilt by the jury
based on the fact that a criminal defendant has been arrested.

### D. The Jail Calls Do Not Implicate Any Doyle Concerns

Defendant also argues that her requests for assistance in
obtaining a lawyer invoke potential Doyle error.  (ECF 393 at 14.)
The government does not concede that Doyle applies here; however, to
address any such concerns, the government can redact all references
to the request for an attorney in the calls, which are not integrally
related to her statements about being "caught" and "cleaning the
house."  In so doing, there is no danger that the jury will reach a
verdict in reliance on defendant's references to attorneys.

---

[6] The government has proposed a stipulation to the defense
regarding the authenticity of the recorded jail calls from the
Broward County Jail.  To date, defendant Terabelian has not agreed to
stipulate to their authenticity.  Should defendant Terabelian
continue to object to the government's proposed stipulation, the
government may need to call at trial a second witness from the
Broward County Sheriff's Department to authenticate the calls.

20

## IV.   CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court deny defendant's motion to suppress or exclude her jail calls, and permit the government to introduce in its case-in-chief at trial two calls made by defendant from the Broward County Jail that have been redacted to remove all references to requests for an attorney.