TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
SCOTT PAETTY (Cal. Bar No. 274719)
CATHERINE AHN (Cal. Bar No. 248286)
BRIAN FAERSTEIN (Cal. Bar No. 274850)
Assistant United States Attorneys
Major Frauds/Environmental and Community Safety Crimes Sections
     1100/1300 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-6527/2424/3819
     Facsimile: (213) 894-6269/0141
     E-mail:    Scott.Paetty@usdoj.gov
                Catherine.S.Ahn@usdoj.gov
                Brian.Faerstein@usdoj.gov

JOSEPH S. BEEMSTERBOER
Acting Chief, Fraud Section
Criminal Division, U.S. Department of Justice
CHRISTOPHER FENTON
Trial Attorney, Fraud Section
Criminal Division, U.S. Department of Justice
     1400 New York Avenue NW, 3rd Floor
     Washington, DC 20530
     Telephone: (202) 320-0539
     Facsimile: (202) 514-0152
     E-mail:    Christopher.Fenton@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:20-cr-579(A)-SVW |
| Plaintiff, | GOVERNMENT'S RESPONSE TO PRESENTENCE INVESTIGATION REPORT FOR MARIETTA TERABELIAN |
| v. | |
| RICHARD AYVAZYAN,<br>   aka "Richard Avazian" and<br>       "Iuliia Zhadko,"<br>MARIETTA TERABELIAN,<br>   aka "Marietta Abelian" and<br>       "Viktoria Kauichko,"<br>ARTUR AYVAZYAN,<br>   aka "Arthur Ayvazyan," and<br>TAMARA DADYAN,<br>MANUK GRIGORYAN,<br>   aka "Mike Grigoryan," and | Sentencing: October 4, 2021<br>Time:        11:00 a.m.<br>Location:    Courtroom of the<br>             Hon. Stephen V. Wilson |

|  |  |
|---|---|
| 1 | "Anton Kudiumov," |
| 2 | ARMAN HAYRAPETYAN, EDVARD PARONYAN, |
| 3 | aka "Edvard Paronian" and "Edward Paronyan," and |
| 4 | VAHE DADYAN, |
| 5 | Defendant. |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California, Assistant United States Attorneys Scott Paetty, Catherine Ahn, and Brian Faerstein, and Department of Justice Trial Attorney Christopher Fenton, hereby files its an initial response, pursuant to Federal Rule of Criminal Procedure 32(f), to the Presentence Investigation Report ("PSR"), prepared by the United States Probation and Pretrial Services Office ("Probation"), for defendant Marietta Terabelian (ECF 890).

The government concurs in the findings of the PSR for Terabelian and respectfully submits this response primarily to correct or clarify the following:

- The section titled "Release Status" on page 2 should be corrected to state that Terabelian was arrested on October 20, 2020, not October 21, and that her total aggregate bond amount is $175,000, consisting of a $75,000 corporate surety bond and a $100,000 appearance bond (ECF 44, 45).
- Paragraph 8 under the section titled "Pretrial Adjustment" should be updated to reflect the fact that on August 29, 2021, Terabelian and her husband and co-defendant Richard Ayvazyan ("R. Ayvazyan") removed their location monitoring bracelets and absconded together from supervision; on August 30, 2021, Judge Stephen V. Wilson signed bench

warrants for Terabelian and R. Ayvazyan's arrest; and, as of the date of this filing, Terabelian and R. Ayvazyan remain fugitives at large.

- Paragraphs 9, 10, an 15 under the section titled "Co-Defendants" should be corrected to state that co-defendants R. Ayvazyan, Artur Ayvazyan and Vahe Dadyan were found guilty by jury trial on June 25, 2021, not June 28.

- Paragraph 26 under the section titled "The Conspiracy" should be corrected to state the alleged conspiracy continued "through at least August 2020," not "through July 2020."

- Footnote 3 under the section titled "The Conspiracy" should be corrected to state that "T. Dadyan texted R. Ayvazyan," not "T. Dadyan texted A. Ayvazyan."

- Paragraphs 33, 34, and 36 under the section titled "The Conspiracy" should be corrected to state "T. DADYAN, TERABELIAN and their co-conspirators", not "TERABELIAN and her co-conspirators"; these paragraphs should also be corrected to state "submitted and caused to be submitted", not "submitted" or "withdrew or caused to withdraw", not "withdrew".

- Paragraphs 41 and 43 under the section titled "The Conspiracy" should be corrected to state "submitted and caused to be submitted", not "submitted"; these paragraphs should also be corrected to refer to "Redline Auto Collision", not "Redline Auto Mechanics".

- Paragraph 44 under the section titled "The Conspiracy" should be corrected to refer to "Grigoryan", not "Paronyan".
- Paragraph 48 under the section titled "The Conspiracy" should be corrected to state "submitted and caused to be submitted", not "submitted".
- Paragraph 55 under the section titled "The Conspiracy" should be corrected to state "submitted and caused to be submitted", not "submitted".
- Paragraphs 70, 77, 88, and 143 should be corrected to state that the actual amount of loan funds obtained by Terabelian and her co-conspirators was $16,907,071.26, not $17,029,484.26, as set forth in the updated information provided by the government to Probation via email on September 8, 2021. Moreover, the actual amount of loan funds obtained from Radius Bank should be corrected to state zero, not $122,413. Accordingly, the number of financial lenders from which Terabelian and her co-conspirators actually obtained loan funds should be corrected to state 12, not 13.
- The second sentence of each of paragraphs 72 and 73 under the section titled "Arrest of the Defendant" contain references to information obtained by U.S. Customs and Border Protection during the manual search of certain phones that were in the possession of R. Ayvazyan and Terabelian during the border stop. This information was the subject of a motion to suppress, which the Court granted (ECF 296), and therefore should not be included in

the PSR or otherwise used in connection with Terabelian's sentencing. To be clear, the seized credit cards described in the first sentence of each of paragraphs 72 and 73 were not implicated by the Court's suppression order, and thus the references to the credit cards should remain in the PSR.

- Paragraph 74 under the section titled "Search of the Residences" states that law enforcement conducted a search of "an apartment under Grigoryan's control in Woodland Hills". Based on the evidence presented at trial, this apartment – which was located at 6150 Canoga Avenue, Unit 337 – was also under the control of R. Ayvazyan and Terabelian. Specifically, the evidence showed that, among other things, at the time of her arrest, Terabelian was in physical possession of a credit card in the name of "Viktoria Kauichko" that had been used to the pay the rent for this apartment which was leased in the name of "Viktoria Kauichko". (Govt Trial Exhibit ("GEX") 44, 76, 88.)

- Paragraph 75 under the section titled "The Defendant's Conduct Regarding Obstruction of Justice" should be corrected to state October 20, 2020, not October 21. Moreover, the quote should be corrected to state "[R. Ayvazyan] and I were caught ... found a card or [I] don't know what ... you know the charges ... clean the house as much as you can ...."

- The quote in paragraph 76 under the section titled "The Defendant's Conduct Regarding Obstruction of Justice"

5

should be corrected to state "Tell mom me and [R. Ayvazyan] are both at the Miami Jail ... tell them so they know ... and try to clean, clean the house as much as you can, everything ... And whoever calls, whatever they say, you shouldn't say anything to anyone."

- The quote in paragraph 78 under the section titled "Adjustment for Obstruction of Justice" should be corrected such that "could" should be changed to "can".

- The Adjustment for Obstruction of Justice, described in paragraphs 78 and 95, is also appropriate for two independent reasons not yet reflected in the PSR. First, Terabelian absconded weeks before her October 4, 2021 sentencing hearing. Application Note 4(E) provides that "escaping or attempting to escape from custody before trial or sentencing" is an example of the type of conduct covered by the Obstruction Adjustment. Second, on November 4, 2020, as law enforcement approached the residence at 4910 Topeka Drive to execute a search warrant, TERABELIAN ran from the kitchen of the residence into the back yard and stashed a grocery bag containing nearly $500,000 in cash in the bushes behind the house. Terabelian's efforts to hide the cash from then-approaching law enforcement were captured in video taken by a drone over the location and photographs taken by law enforcement at the scene. See DOJ_PROD_0000021407; DOJ_PROD_0000022573 - DOJ_PROD_0000022575. Application Note 4(D) provides that "conceal[ing] evidence that is material to an official investigation or judicial proceeding (e.g., shredding a

6

      document or destroying ledgers upon learning that an official investigation has commenced or is about to commence), or attempting to do so" is the type of conduct covered by the Obstruction Adjustment. Significantly, this conduct did not take place contemporaneous with TERABELIAN's arrest; to the contrary, it took place two weeks following Terabelian's arrest.

- The government agrees that the counts described in paragraphs 84 and 85 all group under the "Groups of Closely Related Counts" rules set forth in U.S.S.G. § 3D1.2. However, the government believes these counts of conviction are more appropriately grouped under § 3D1.2(d) as opposed to § 3D1.2(b) because the offense level for those counts of conviction "is determined largely on the basis of the total amount of harm or loss."

- The government agrees that the counts described in paragraph 86 all group under the "Groups of Closely Related Counts" rules set forth in U.S.S.G. § 3D1.2. However, the government believes that, in addition to § 3D1.2(d), these counts of conviction also may be appropriately grouped under § 3D1.2(c) which applies "when one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts." See U.S.S.G. § 2S1.1, App. Note 6 ("In a case in which the defendant is convicted of a count of laundering funds and a count for the underlying offense from which the laundered funds were

7

- Footnote 11 states "If the Court does not conclude that a two-level increase is warranted under [USSG §2B1.1(b)(10) for "sophisticated means"], the Probation Officer maintains that the conduct described may warrant a two-level increase pursuant to USSG §2S1.1(b)(3) for sophisticated laundering." The government agrees that a two-level increase is warranted – either pursuant to USSG §2B1.1(b)(10) for "sophisticated means" or USSG §2S1.1(b)(3) for "sophisticated laundering" – as the evidence summarized in the PSR clearly supports the application of both enhancements.

Dated: September 13, 2021              Respectfully submitted,

TRACY L. WILKISON
Acting United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

          /s/
CATHERINE AHN
SCOTT PAETTY
BRIAN FAERSTEIN
Assistant United States Attorneys
CHRISTOPHER FENTON
Department of Justice Trial Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

(text from top of page, line 1-2:) derived, the counts shall be grouped pursuant to subsection (c) of §3D1.2 (Groups of Closely-Related Counts).").